If it pleases the court, Bernal Ojeda for the petitioner. I would ask for two minutes on rebuttal if that is fine with the court. That's fine with us. You can see the clock but I'll also try to watch the clock as mine is probably a little bigger here. Understood. The position of the petitioner, your honors, is that there was a denial of due process. Here, in order for there to be a fair and impartial hearing, there has to be a focus on whether or not there was an intelligent and knowing waiver of counsel. I'm not suggesting that in removal proceedings there's an absolute right to counsel. There is not. But if a petitioner seeks to proceed improper, there has to be a knowing and intelligent waiver. The case of Agamemnon does speak to that. The case of the judge is asking petitioner about the idea of pursuing or speaking to an attorney or someone that can help him. The petitioner responds really not focused on that question but is asking about bond and whether or not he's the judge was aware the petitioner was not perhaps focused or even listening to what is being said. Ultimately, excuse me, so the IJ, your client asked the IJ for his recommendation and the IJ says I think it's probably a good idea to talk with an attorney. And then repeats, do you want the time to get an attorney? I'll give you the time, otherwise we'll start the case. And your client says continue with the case. So why isn't that sufficient to meet the requirements under TWADIS? I think there has to be, again, an informed waiver, if you will, your honor, that the consequences of moving forward improper, in particular in an asylum case, there needs to be, I think, some explanation about the consequences of proceeding improper. There was no such discussion about the consequences, for example, a 10-year bar, separation from family, perhaps loss of job. And is there any case that supports that? You cited these FRERTA colloquy cases, FRERTA waiver cases, which of course implicates the Sixth Amendment right to counsel, not the Fifth Amendment that we have in an immigration case. So are there any cases in the immigration context that support your position? Are you asking us to extend the law on that point? Well, the case of Jacinto, your honor, does speak to what's required for a full and fair hearing. And in that case, the court held and found that the judge failed to explain the asylum procedures to the petitioner in that case, and that that was considered a violation of due process. The bottom line is, what's the prejudice here, in terms of when we look at the facts and we look at the case? Well, Tawana says if there is not an intelligent waiver, it's not like a harmless error, because the consequences are severe. I think that you have to have, when petitioner is talking about proceeding and prepare, you have to have, I think, more of an input and more of an emphasis on the idea that, you know, to help you. And that's, again, at AR 93. So it's somewhat confusing, I think, to a petitioner. Because I don't think that petitioner appreciated the impact and the direct consequences of moving forward without counsel. Petitioner is not obviously an attorney. Under Jacinto, the procedures should have been explained, what is required to show an asylum, and also what is required to show convention against torture. None of those things were discussed with the petitioner. So I don't believe the petitioner was in a position to make a knowing and intelligent waiver. Is there anything in the record that you could point to that indicates that the petitioner had some difficulty understanding that he had a right to have an attorney? Well, I can point to AR 93 and 94, where they're talking about, the judge is asking petitioner about time to find an attorney or find anyone to help him. That's a bit confusing, I think, to the petitioner. But the petitioner's response is, I would like to know if I qualify for a bond. So clearly, there was a disconnect in their communication. The judge goes on to say, you know, I asked a lot of questions, some people would prefer to talk to an attorney before they talked to me. And again, the petitioner is more concerned about his bond. And then he asked the court, you know, what do you recommend? The judge just simply says, you know, I think it's a good idea to talk to an attorney to discuss your case. But the judge does not state something to the effect of, you know, I urge you that you speak to an attorney or you've been provided a list of pro bono help. It'll be very important for you to contact those people. The consequences are serious. And this is the type of law that applies. This is the type of evidence that you And that's why I think there has been a violation of his due process. Do you want to save the remaining time? You have about two and a half minutes. I will save the remaining time, Your Honor. Thank you. Good morning, Your Honors, and may it please the court, Alison Frayer for the Attorney General. In this case, the immigration judge obtained a knowing involuntary waiver of Mr. Venegas's right to counsel, and he properly preserved Mr. Venegas's procedural rights under the regulation at H.C.F.R. 1240.10. And therefore, the petition for review should be denied. First, with Mr. Venegas voluntarily waived that right at two separate hearings where the I.J. did what he was required to do under this court's president decision in Tawadros. The I.J. specifically asked if Mr. Venegas wanted to proceed without an attorney, and Mr. Venegas replied, yes. That is sufficient. Mr. Venegas argues before this court that his waiver must be intelligent, but that's not a standard in Fifth Amendment cases. That's from the Sixth Amendment context, and this court has ruled in Tawadros and B.O. and other cases that all the I.J. needs to do is obtain a knowing involuntary affirmative response. Silence is not enough, but here the I.J. was not relying on silence. He had the affirmative and voluntary response that he needed, or that he was required to obtain, and at that point he had no choice but continue the hearing. The I.J. is not in a position to require a noncitizen to take an attorney if he has asked the noncitizen if he would like an attorney and offered to give him time to go find that attorney, and the noncitizen says, no, I don't want one. The I.J. has to continue with the hearing. The I.J. can't force the noncitizen to take an attorney, and this court, nor any other that I'm aware of, has never ruled that the I.J. must warn that it's an unwise choice. It's petitioner's choice to make, and even if the I.J. finds it unwise, it's not his job to editorialize in that manner and tell the noncitizen what to do. The advice, of course, is also tied in with the regulatory obligation, so it's not clear from this record that the petitioner understands that he has a right to an attorney and that there are free options available. Now, I know something was said in terms of you have a right to an attorney. These are some pro bono attorneys. So the things that are in the regulation were not really laid out by the I.J. What is the consequence of that? Here, there should not be any consequence of that. Mr. Venegas did not exhaust his claim that he missed out on a recitation of the rights in the regulation. It was not before the board, so this court lacks jurisdiction over it. Even if the court were to overlook jurisdiction, Mr. Venegas might have missed out on that formulaic recitation, but he received the rights in practice. The I.J. informed him that he could have an attorney on multiple occasions. So even if he didn't say, you have the right to an attorney at your own expense, he told him, you can have an attorney. I can give you some time to look for that. I'd be glad to do that. Would you like one? So he affected the right in practice, even without a recitation of it. Similarly, the other parts of the regulation require that the noncitizen receive the pro bono list, which Mr. Venegas does not dispute that he did receive as required. It requires that the noncitizen receive information about the appeal rights, which obviously don't come up at the beginning of the hearing, but at the end, Mr. Venegas does not dispute that he got those, and in fact, he was able to determine where to send the form. The regulation also requires that the I.J. inform the noncitizen that they have the right to present evidence and confront DHS's evidence. The I.J. didn't use those words, but he repeatedly told Mr. Venegas that he could bring with him any witnesses or evidence that he had, and Mr. Venegas did bring medical documents about the medical condition of one of his children. He brought a statement from Mexico, which he knew how to get translated properly and before the I.J., so he clearly knew enough to do what he could do under the circumstances to get the evidence before the I.J. And the I.J. didn't use the phrase confront DHS's evidence, but he did go over DHS's evidence with Mr. Venegas in the hearing. He asked him about the Form I-213s, the inadmissibility and deportability form. He asked him about what was listed there, the convictions. Were you convicted in this way? If this says that you were removed, is that so? Mr. Venegas thought it was a voluntary departure rather than a removal before the I.J. They talked about that for a bit, so Mr. Venegas had the opportunity to put forth his version of events and to under oath, which the I.J. obviously did, to read the NTA and the allegations in charge in there in layman's terms, which the I.J. did. They went over it line by line, and to enter the exhibit, enter the NTA as an exhibit in the record, which was also done. So to the extent that Mr. Venegas may have missed out on a formulaic recitation of his rights in practice, so there could not be any prejudice, particularly where Mr. Venegas no longer claims that he's eligible for asylum, withholding, cat protection, or cancellation of removal. Without maintaining that alleged eligibility for protection and relief, he can't show that he was prejudiced by any regulatory violation that may have occurred. Importantly here, the I.J. does not have a continuing duty to keep checking in with a non-citizen about the waiver of the right to counsel. The I.J. did that here at the third hearing, checked in and asked if he still wanted to represent himself, but that's not required. So the I.J. here was going above and beyond to ensure that Mr. Venegas had validly waived his right to counsel and understood that right. Mr. Venegas claims that he might have been confused by the I.J.'s language at the close of the first hearing, where the I.J. told Mr. Venegas that he could have someone help him fill out the applications, a friend, an attorney, anybody. We don't actually have a statement from Mr. Venegas in the record at all, even once he obtained counsel, so we don't know what he knew or didn't know or what he understood or didn't understand. But I think it's fairer to read that statement as the I.J. reminding Mr. Venegas that just because he'd waived the right to counsel for the purposes of that hearing, he could nevertheless go forward and get an attorney at a later date to represent him in later phases of the proceeding if he preferred or if he found that possible. This Court has sometimes looked askance at I.J.'s who treat the waiver as ironclad, that once the noncitizen waives his right in the first hearing, then the I.J.'s should be careful to make sure that should the noncitizen change his mind or come up with an attorney, that the I.J. should be careful to vindicate the right to counsel throughout the proceedings. And so I think that's the I.J.'s attempt to do so, to remind Mr. Venegas that if at some point in the future he finds himself wanting an attorney and able to obtain one, that he can do so. It wouldn't be too late to show up with an attorney later. All right, if there are no further questions from this Court. It appears there are no further questions. Thank you. Thank you.  Thank you, Your Honors. If it pleases the Court. You know, we can't we can't just assume that petitioner understood. And when counsel speaks to, you know, he was given his rights in practice at that point, the proceeding is already taking place. And what we're really discussing is prior to the proceeding even commencing and prior to any evidence being admitted, whether or not there's been a knowing and intelligent waiver. And again, without a discussion of the procedures and the law applicable, and that's enumerated in the case of Jacinto, we can't just assume whether he understood or not. And even counsel says that the record is somewhat unclear as to what petitioner knew or understood. So I think that that does support petitioner's position that his rights of due process were violated. And I will submit, Your Honors. Thank you. The case just argued Urbina-Alvarez v. Garland is submitted. I thank both counsel for your arguments and also appreciate Mr. Ojeda that you made arrangements to appear by video because it's very difficult via telephone. So we appreciate that. Thank you. Next case for argument will be United States v. Madril.
judges: McKEOWN, IKUTA, Daniels